UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THOMAS BIEDERMANN,<br><br>    Plaintiff,<br><br>    v.<br><br>REPRESENTATIVE GINNY EHRHART, in her individual and official capacities,<br><br>    Defendant. | CIVIL ACTION NO.<br>1:20-CV-01388-JPB |

### ORDER

This matter comes before the Court on Representative Ginny Ehrhart's ("Defendant") Renewed Motion to Dismiss Thomas Biedermann's ("Plaintiff") Complaint [Doc. 29]. This Court finds as follows:

### BACKGROUND

Plaintiff is a resident of Fulton County, Georgia, who is politically active in his community. [Doc. 1, p. 2]. He engages in public debate on social media platforms, including Facebook. Id. Defendant is a Representative in the Georgia State House of Representatives. Id. at 3–4. Defendant maintains an official Facebook page, "@GinnyEhrhartForGA," which she created in December 2017. Id. at 3. The Facebook page identifies Defendant as a State Representative, lists her affiliation with the Republican Party and her status as a "Political Candidate,"

describes her political views and provides contact information for Defendant's position as a State Representative. Id. at 4. Defendant documents her legislative and public activities on the Facebook page by posting about legislation at the Georgia State House of Representatives, promoting political issues relevant to her constituency and updating citizens about her official activities. Id. The Facebook page also includes posts by other Facebook users "engaging in public debate on matters of public concern," particularly Defendant's legislative proposals and political opinions. Id. at 5. Defendant maintains the Facebook page and encourages citizens to post comments on public issues and to use the platform to communicate directly with her office. Id. at 4–5.

On October 30, 2019, Defendant posted a press release to the Facebook page about her proposed bill to criminalize certain surgeries performed on transgender children. Id. at 6. Plaintiff wrote a disapproving comment on that post, and his comment was deleted. Id. at 7. Plaintiff posted multiple comments on the Facebook page in the following days, but all of those comments were deleted, too. Id. Plaintiff alleges that because Defendant disagreed with Plaintiff's political views, Defendant blocked him from posting on her official Facebook page or from engaging through other means, such as commenting on posts or using Facebook's reaction feature. Id. at 6.

In a December 3, 2019 news segment, Defendant addressed Plaintiff's complaint about being blocked from the Facebook page by suggesting that Plaintiff made threatening posts in the past. Id. at 8. On December 5, 2019, Plaintiff emailed Defendant to express his concerns about being blocked from the Facebook page and to request that his access be restored. Id. Plaintiff did not receive a response then or when he followed up two months later. Id.

Defendant claims that comments are deleted for containing "profanity, dishonesty, personal character attacks, or cyber stalking" and that posts are deleted when they violate her written policy regarding social media usage. Id. at 8–9. The Facebook page does not provide any written policy about the public's engagement with the page or about participation in discussions on Defendant's official social media platforms. Id. at 9. Nevertheless, Plaintiff alleges that he never made threatening posts and never posted comments of a defamatory, pornographic, obscene or violent nature. Id. Plaintiff continues to be blocked from posting, commenting on or liking content or otherwise engaging on the Facebook page. Id.

Plaintiff filed this action on March 30, 2020.[1] In the Complaint, Plaintiff brought two counts under 42 U.S.C. § 1983: (1) retaliation for exercise of free

---

[1] Plaintiff simultaneously filed a Motion for Preliminary Injunction but did not request an immediate hearing on that motion. [Doc. 2, p. 2].

3

expression under the First Amendment to the United States Constitution, against Defendant in her individual capacity ("Count One"), and (2) violation of Plaintiff's right to free speech under the First and Fourteenth Amendments, against Defendant in her individual and official capacities ("Count Two"). Plaintiff also seeks declaratory and injunctive relief against Defendant in her official capacity under 28 U.S.C. § 2201 ("Count Three").

Defendant filed a Motion to Dismiss on June 22, 2020. [Doc. 10]. The Court denied that motion on March 19, 2021, granting Defendant leave to renew the motion after complying with the applicable page limits. [Doc. 28, p. 3]. Defendant filed the instant Renewed Motion to Dismiss on April 1, 2021, seeking to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [Doc. 29]. Specifically, Defendant argues that Plaintiff failed to plead facts showing an injury in fact sufficient for Article III standing or to allege a plausible claim to relief.

## ANALYSIS

**A.     Legal Standard**

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir.

4

1999). In determining whether this action should be dismissed for failure to state a claim, Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

Challenges to subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure take two forms. A facial attack questions subject matter jurisdiction based on the allegations in the complaint alone.[2] Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). This is not the case for a factual attack, which contests jurisdiction "'in fact, irrespective of the

---

[2] Defendant brings a facial attack to the Court's jurisdiction. [Doc. 29, p. 2].

pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." Morrison, 323 F.3d at 925 (citation omitted). Finally, "[t]he burden of proof on a motion to dismiss for lack of subject-matter jurisdiction is on the party asserting jurisdiction." Murphy v. Sec'y, U.S. Dep't of Army, 769 F. App'x 779, 782 (11th Cir. 2019).

**B.    Standing**

Defendant's first argument for the dismissal of Plaintiff's claims is that he failed to show an injury in fact and therefore lacks standing before this Court. To satisfy standing requirements under Article III of the Constitution, a plaintiff must show that he (1) suffered an injury in fact (2) that is fairly traceable to the defendant's challenged conduct and (3) that is likely to be redressed by a favorable judicial decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). At the pleading stage, the court must accept as true all material allegations and construe them in favor of the complaining party. Corbett v. Transp. Sec. Admin., 930 F.3d 1225, 1228 (11th Cir. 2019). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." LaCroix v. Lee Cnty., 819 F. App'x 839, 841 (11th Cir. 2020) (alteration in original) (quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008)).

The injury-in-fact requirement of the standing doctrine "helps to ensure that the plaintiff has a 'personal stake in the outcome of the controversy.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)). A plaintiff must show that the injury is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.'" Id. (quoting Lujan, 504 U.S. at 560). When seeking injunctive relief, a plaintiff must "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." LaCroix, 819 F. App'x at 841 (quoting Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th Cir. 1999)). Finally, courts apply the injury-in-fact requirement "most loosely where First Amendment rights are involved, lest free speech be chilled even before the law or regulation is enforced." Harrell v. The Fla. Bar, 608 F.3d 1241, 1254 (11th Cir. 2010).

Plaintiff alleges that Defendant "censored" and "silenced" his speech by "denying him the right to speak publicly on Defendant's official State Representative Ginny Ehrhart Facebook Page." [Doc. 1, p. 11]. Specifically, Plaintiff claims that because Defendant disagreed with the content of his speech, Defendant deleted his comments, blocked him from engaging with the Facebook page and prevented him from expressing opinions via Facebook's reaction feature. Finally, Plaintiff alleges that he suffered and continues to suffer loss of First

7

Amendment rights as a result of Defendant's actions.

Defendant argues that Plaintiff's allegations are insufficient to confer standing. First, Defendant claims that Plaintiff is not "'silenced' or 'censored' from commenting on the Facebook page in a concrete or particularized sense" and that Plaintiff set forth only an "abstract harm." [Doc. 29-1, pp. 9, 10]. A "particularized" injury must "affect the plaintiff in a personal and individual way." Gardner v. Mutz, 962 F.3d 1329, 1342 (11th Cir. 2020) (quoting Lujan, 504 U.S. at 560 n.1). Plaintiff alleges that he is personally blocked from engaging with the Facebook page because of Defendant's disagreement with his political views. Accordingly, Plaintiff's allegations show a particularized injury that affects him personally and individually.

To be "concrete," an injury "must be '*de facto*'; that is, it must actually exist." Spokeo, Inc. v. Robins, 578 U.S. 330, 340 (2016). However, "concrete" is not "necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize, [the United States Supreme Court has] confirmed in many of [its] previous cases that intangible injuries can nevertheless be concrete." Id. Plaintiff's inability to interact with the Facebook page may be "intangible," but it is a concrete harm nonetheless; according to the Complaint, Plaintiff cannot comment on or react to content relating to issues of public concern on Defendant's

8

official Facebook page.  Plaintiff's alleged injury is sufficiently concrete for standing purposes.

Second, Defendant claims that banning a particular account from her Facebook page "amounts at most to a trivial inconvenience on Plaintiff, which the Constitution does not guard against."  [Doc. 29-1, p. 9].  According to Plaintiff, Defendant infringed his First Amendment freedoms through "targeted censorship" of his speech.  [Doc. 1, p. 5].  Because Plaintiff alleges that Defendant violated his First Amendment rights, the Court cannot agree with Defendant that Plaintiff suffered only a "trivial inconvenience."  See Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").  Furthermore, because the Court may "loosely" conduct the injury-in-fact inquiry in this context to avoid chilling free speech,  Harrell, 608 F.3d at 1254, even a "trivial inconvenience" would likely be sufficient to confer standing.

Defendant next contends that Plaintiff's allegations are a "fundamental mischaracterization of the consequences of 'banning' a user profile on Facebook."[3]

---

[3] For example, Defendant claims that "nothing about [Defendant's] banning a user account controlled by Plaintiff inhibits him from sharing [Defendant's] posts to *his own page* or user profile, and voicing his opinion there in any manner he sees fit." [Doc. 29-1, p. 9].  However, Plaintiff's alleged injury concerns his inability to engage with *Defendant's* Facebook page, and the Court must frame its analysis accordingly.

[Doc. 29-1, p. 9]. Defendant appears to ask this Court to interpret or characterize the facts in the Complaint in a manner other than how they are presented. This, the Court cannot do. Because Defendant brings a facial attack to jurisdiction, the Court views the facts in the Complaint as true for the purposes of assessing whether Plaintiff has standing. See Lawrence, 919 F.2d at 1529.

Finally, Defendant does not distinguish between Plaintiff's standing to seek damages and Plaintiff's standing to seek equitable relief. Plaintiff alleges that he continues to suffer the claimed harms because he remains blocked from the Facebook page. As a "concerned" and "politically active" citizen who uses Facebook to participate in public debate, Plaintiff will likely continue to seek the opportunity to engage in discussion on Defendant's official Facebook page. [Doc. 1, p. 2]. His allegations thus show "a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future." Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1283 (11th Cir. 2001). Consequently, the Court finds that Plaintiff alleged a sufficient injury in fact for Article III standing to seek both damages and equitable relief. Defendant's Renewed Motion to Dismiss the Complaint for lack of standing is **DENIED**.

**C.  § 1983 Claims**

Defendant's second argument for dismissal is that she is entitled to qualified immunity as to Plaintiff's § 1983 claims (i.e., Counts One and Two).[4]  Plaintiff brought Count One against Defendant in her individual capacity and Count Two against Defendant in both her individual and official capacities.  The Court will address the claims brought against Defendant in her individual capacity before turning to the official capacity claim.

**1.  *Individual Capacity Claims***

The defense of qualified immunity is ordinarily addressed at the summary judgment stage of a case.  Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001).  Nevertheless, the Eleventh Circuit Court of Appeals held that it may be raised and considered on a motion to dismiss.  St. George v. Pinellas Cnty., 285 F.3d 1334, 1337 (11th Cir. 2002).  Because qualified immunity is a "'defense not only from liability, but also from suit, it is important for a court to ascertain the

---

[4] Defendant "does not concede" that her actions meet the necessary elements for a § 1983 claim but instead assumes *arguendo* that they do. [Doc. 29-1, p. 11 n.2]. Although Defendant argues in her Reply that she did not act under color of state law, see [Doc. 30, pp. 4–6], she did not address this contention in the Renewed Motion to Dismiss.  Because "[i]t is well settled that a party cannot argue an issue in its reply brief that was not preserved in its initial brief," the Court considers this argument to be waived with respect to the instant Motion.  Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen, 815 F.2d 1435, 1446 n.16 (11th Cir. 1987).

validity of a qualified immunity defense as early in the lawsuit as possible.'" Paez v. Mulvey, 915 F.3d 1276, 1284 (11th Cir. 2019) (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).  But even though "'qualified immunity questions should be resolved at the earliest possible stage of litigation,'" the Supreme Court "has not suggested that the procedural rules applicable to a motion to dismiss should be abrogated." Byrd v. City of Atlanta, 683 F. Supp. 804, 812 (N.D. Ga. 1988) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When considering the qualified immunity defense on a motion to dismiss, a court must determine whether the "complaint fails to allege the violation of a clearly established constitutional right."  Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting St. George, 285 F.3d at 1337).

Under the doctrine of qualified immunity, government officials are shielded from liability when acting within the scope of their discretionary authority unless they violated a plaintiff's clearly established statutory or constitutional rights. Post v. City of Fort Lauderdale, 7 F.3d 1552, 1556 (11th Cir. 1993), modified, 14 F.3d 583 (11th Cir. 1994).  Once a defendant shows that his actions were within his discretionary authority, "the burden shifts to the plaintiff to show that qualified

immunity is not appropriate."[5] Paez, 915 F.3d at 1284. A defendant is entitled to qualified immunity unless the plaintiff shows that: (1) the defendant violated a federal statutory or constitutional right and (2) the right was clearly established when the violation occurred. Id. Importantly, "[b]oth elements of this test must be present for an official to lose qualified immunity, and this two-pronged analysis may be done in whatever order is deemed most appropriate for the case." Rivera v. Carvajal, 777 F. App'x 434, 437 (11th Cir. 2019) (quoting Brown v. City of Huntsville, 608 F.3d 724, 734 (11th Cir. 2010)).

As to the first element, the Court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (alteration in original) (quoting Hope v. Pelzer, 536 U.S. 730, 736 (2002)). The Court construes the facts alleged "'in the light most favorable to the party asserting the injury.'" Lee, 284 F.3d at 1194 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

For the second element, a plaintiff must show that the defendant violated a statutory or constitutional right that was clearly established when the violation occurred. The Eleventh Circuit uses multiple methods to determine whether a right

---

[5] Plaintiff does not contest that Defendant acted within the scope of her discretionary authority; therefore, the Court will not further discuss this component of the qualified immunity analysis.

was clearly established.  First, a plaintiff "can show that a materially similar case has already been decided, giving notice to the [official]."  Mercado v. City of Orlando, 407 F.3d 1152, 1159 (11th Cir. 2005).  A second method requires the plaintiff to demonstrate that "a broad statement of principle within the Constitution, statute, or case law . . . clearly establishes a constitutional right."  Lewis v. City of W. Palm Beach, 561 F.3d 1288, 1292 (11th Cir. 2009); see also Mercado, 407 F.3d at 1159.  Finally, a narrow exception exists for "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law."  Lewis, 561 F.3d at 1292.  Ultimately, "*fair and clear notice* to government officials is the cornerstone of qualified immunity."  Bashir v. Rockdale Cnty., 445 F.3d 1323, 1331 (11th Cir. 2006) (quoting Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002)).

Because Plaintiff does not contest that Defendant's actions were within her discretionary authority, the burden shifts to Plaintiff to show that Defendant violated a clearly established right.  Defendant argues that Plaintiff failed to do so.  The Court will conduct the qualified immunity inquiry in reverse order and begin by considering whether the relevant law was clearly established when the offensive conduct occurred.

Defendant argues that Plaintiff cannot show that the First Amendment rights[6] at issue were clearly established under any of the methods used by the Eleventh Circuit.  Plaintiff claims that his rights were clearly established by virtue of "long established, core free speech principles."  [Doc. 16, p. 10].  The Court will focus its analysis under this method by considering whether a broad principle of law clearly established the First Amendment rights that Plaintiff alleges were violated in this case.

In the absence of materially similar case law, "general statements of the law are not inherently incapable of giving fair and clear warning" to a government official that her actions are unconstitutional.  United States v. Lanier, 520 U.S. 259, 271 (1997).  For example, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question," even though that conduct has not previously been held unlawful.  Id.  In this case, the "salient question" is "whether the state of the law in [2019] gave [Defendant] fair warning" that her actions were unlawful.  Hope, 536 U.S. at 741.  Plaintiff alleges that he held a clearly established constitutional right "to speak freely on

---

[6] Plaintiff alleges that Defendant violated his right against retaliation for exercise of free expression (Count One) and his right to free speech (Count Two), both under the First Amendment.  The Court refers to these rights collectively as the "First Amendment rights" in this case.

15

topics relevant to the government in a government-established forum, and particularly in an online social-media-based forum – of which all reasonable government officials should have known." [Doc. 1, p. 13].  The Court cannot agree with this proposition.

Plaintiff points to several cases that he alleges show the clearly established status of the First Amendment rights that Defendant purportedly violated.  See [Doc. 16, pp. 11–14].  While those cases involve the First Amendment rights at issue here, they address those rights in too general a manner to have placed Defendant on notice that her actions were unlawful.  For example, none of the cases involves the use of social media or a comparable platform by a government official.  Yet "[the clearly established] inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'"  Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (quoting Saucier, 533 U.S. at 201); see also D'Aguanno v. Gallagher, 50 F.3d 877, 880 (11th Cir. 1995) ("To overcome the qualified immunity defense, citing precedent which establishes a general right will not do.").  "The contours of the right must be sufficiently clear that a reasonable official would understand that what [s]he is doing violates that right," Anderson v. Creighton, 483 U.S. 635, 640 (1987), even when showing that a right is clearly

established by virtue of a "broad principle." That is, "in the light of pre-existing law," the unconstitutionality of Defendant's conduct "must be apparent." Id.

The Court does not consider the unlawfulness of Defendant's actions to be "apparent" in this case. It is true that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope, 536 U.S. at 741. However, the law in this area—the intersection of First Amendment rights and engagement with government officials' social media pages—is unsettled and continues to evolve. Because of this uncertainty, courts in this district and others have upheld qualified immunity on the grounds that the rights at issue were not clearly established. See Attwood v. Clemons, 526 F. Supp. 3d 1152, 1176 (N.D. Fla. 2021) (finding that the defendant was entitled to qualified immunity in the absence of clearly established law regarding the plaintiff's "right to speak on [d]efendant's social media accounts"); McKercher v. Morrison, No. 18CV1054, 2019 WL 1098935, at *4 (S.D. Cal. Mar. 8, 2019) ("The court concludes that the issue of a public official's private use of social media platforms like Facebook to communicate with, among others, constituents is not well-settled, to say nothing of 'clearly established.'"); Novak v. City of Parma, 932 F.3d 421, 434 (6th Cir. 2019) ("No doubt, any right [the plaintiff] or the commenters may have to post or receive comments [on Facebook] was not 'beyond debate' at the time the officers deleted

17

the comments." (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011))). Consequently, the Court does not believe that in 2019, the law was sufficiently clear on the constitutionality of blocking a citizen from a government official's social media page to provide Defendant with notice that her conduct was unlawful.

Having concluded that the First Amendment rights at issue were not clearly established, the Court need not address whether Plaintiff suffered a constitutional violation. Rivera, 777 F. App'x at 437. The Renewed Motion to Dismiss Count One in its entirety and Count Two against Defendant in her individual capacity is **GRANTED**.

### 2. *Official Capacity Claim*

In Count Two, Plaintiff brought a § 1983 claim against Defendant in her individual *and* official capacities for violating Plaintiff's First Amendment right to free speech. Government officials may invoke the qualified immunity defense only if they are sued in their individual capacity. Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1047 (11th Cir. 2008). Other than the defense of qualified immunity, which does not apply in this instance, Defendant did not make any arguments for the dismissal of Count Two against her in her official capacity. As such, the Renewed Motion to Dismiss Count Two against Defendant in her official capacity is **DENIED**.

### D. Claim for Declaratory and Injunctive Relief

In Count Three, Plaintiff requests a declaration that Defendant's censorship of posts on the Facebook page that are critical of her and her policies is unconstitutional and violates Plaintiff's rights to freedom of speech under the First and Fourteenth Amendments.  Plaintiff also seeks injunctive relief requiring Defendant to (1) cease censoring Plaintiff's comments on the Facebook page, (2) stop the practice of deleting comments and blocking posters without sufficient standards and (3) restore Plaintiff's posting privileges to the Facebook page.

Defendant moves to dismiss "all of Plaintiff's claims against [her]" on the grounds that she is entitled to qualified immunity.  [Doc. 29-1, p. 25].  However, a government official may assert the defense of qualified immunity only when she faces liability for damages in her individual capacity.  Ratliff v. DeKalb Cnty., 62 F.3d 338, 340 n.4 (11th Cir. 1995).  "[Q]ualified immunity may not be effectively asserted as a defense to a claim for declaratory or injunctive relief."  Id.  As such, Defendant may not assert qualified immunity as a defense to Plaintiff's claims for declaratory and injunctive relief.  Because Defendant provided no other basis for the dismissal of those claims, the Renewed Motion to Dismiss is **DENIED** with respect to Count Three.

## CONCLUSION

Defendant's Renewed Motion to Dismiss [Doc. 29] is **DENIED IN PART** and **GRANTED IN PART**. Count One of the Complaint is **DISMISSED**. Count Two of the Complaint against Defendant in her individual capacity is **DISMISSED**. Count Two against Defendant in her official capacity and Count Three shall proceed.

**SO ORDERED** this 14th day of March, 2022.

J. P. BOULEE
United States District Judge